The DIPLOMAT LAKEWOOD
INCORPORATED, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Defendant.

Civ. A. No. 76–2052.

United States District Court,
District of Columbia.

June 9, 1978.

George R. Clark, Thomas C. Fox, Joel M. Hamme, Washington, D. C., for plaintiff.

William H. Briggs, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This case arises under the Medicare provisions of the Social Security Act, which provide federally funded health insurance programs for the aged and the disabled.[1] Under the Medicare program, the providers of services are reimbursed for the reasonable cost incurred. At issue in this proceeding is the validity of certain regulatory changes requiring the use of specific accounting methods for determining reimbursement to nursing homes. The matter comes before the Court on cross-motions for summary judgment. The Court concludes that the regulations are valid and the government is entitled to judgment as a matter of law.

### Background

The material facts are not in dispute. Plaintiff, Diplomat Lakewood Inc., owns and operates a 129 bed nursing home which provides services to Medicare beneficiaries and non-Medicare patients. The defendant, Secretary of Health, Education and Welfare (HEW), has certified Diplomat Lakewood as a "distinct part 'skilled nursing facility'," demonstrating that it offers nursing services one level below intensive care to eligible Medicare beneficiaries in one section of the home. Approximately one-fourth of plaintiff's patients are Medicare beneficiaries who require this high degree of care.

As a provider Diplomat Lakewood is entitled to reimbursement by HEW for the "reasonable cost" of services rendered to Medicare patients.[2] Reasonable cost is defined as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." Congress invested the Secretary with broad discretion to prescribe regulations establishing methods of calculating reasonable cost. He is directed, however, to take into account both the direct and indirect costs of providers, in order to ensure that Medicare patients and patients not entitled to such benefits do not subsidize each other.[3] This factor is especially crucial where a provider serves both groups of patients and an apportionment of costs between them becomes necessary.

At the initiation of the program in 1966, the Secretary promulgated regulations establishing two accounting methods for cost apportionment, the Departmental and the

---

1. Title XVIII, Health Insurance for Aged and Disabled, Social Security Act, 42 U.S.C. § 1395 *et seq.*

2. 42 U.S.C. § 1395x(v)(1)(A).

3. *Id.*

Combination Methods.[4] In simplified terms, the key difference is that the Departmental Method requires a provider to make a relatively sophisticated allocation of beneficiary-nonbeneficiary costs within ancillary service departments such as X-ray and pharmacy, while the Combination Method utilizes a less complex system of ratios or percentages of aggregate routine and ancillary costs. Under the 1966 regulations a provider had the option of using either method, the Secretary having found that each fulfilled the statutory directive against cross-subsidization between Medicare and other patients.[5] The parties agree that the Departmental Method is the more accurate of the two, if a provider has the requisite accounting ability to use it.

In May 1972, following notice and comment on the proposal, the Secretary eliminated the option allowing skilled nursing facilities to use either method. The new regulations, still in effect, require any hospital or hospital-affiliated skilled nursing facility having 100 or more beds to use the Departmental Method. All other skilled nursing facilities, regardless of bed number, must use the Combination Method.[6]

Prior to the regulatory change, Diplomat Lakewood utilized the Departmental Method. The change in regulations forced it, a nonaffiliated nursing home, to use the Combination Method. The required use of that method for fiscal years 1973 and 1974 resulted in a loss of $56,302 of Medicare reimbursement for actual costs to the plaintiff.

Diplomat Lakewood challenged the regulatory change before the Provider Reimbursement Review Board (Board).[7] The Board found that plaintiff had indeed been denied Medicare reimbursement by using the Combination Method and that it had the accounting ability to utilize successfully the Departmental Method. Nonetheless, it upheld the regulations, finding itself bound by the action of the Secretary.

Diplomat Lakewood requests the Court to reverse the Board's decision, as not supported by substantial evidence, and to invalidate the regulatory change. Plaintiff's summary judgment motion claims that: 1) the new regulations make an arbitrary distinction between hospital-affiliated and other skilled nursing facilities of 100 or more beds; 2) the regulations exceed the Secretary's statutory authority because they force subsidization of Medicare costs by nonprogram sources; and 3) the Secretary violated § 4 of the Administrative Procedure Act (APA),[8] by failing to publish a concise statement of basis and purpose of the new cost apportionment rules. The agency, in support of its cross-motion for summary judgment, argues that the regulations are valid and reasonable in all respects.

### Legal Analysis

Under the judicial review provisions of the Administrative Procedure Act, the Court must set aside a hearing decision not supported by substantial evidence.[9] Since the Board found itself bound to uphold the Secretary's regulations on cost apportionment, the Court must focus directly on Diplomat Lakewood's objections to the regulations.

The plaintiff's principal arguments are that the 1972 regulations requiring it to use the Combination Method are arbitrary and capricious, and that the HEW decision was not based on "a consideration of all relevant factors." *American Paper Institute v. Train*, 177 U.S.App.D.C. 181, 191, 543 F.2d 328, 338 (1976). The Secretary did not review the potential impact of the mandated Combination Method on large nursing homes like Diplomat Lakewood, which had

---

**4.** 20 C.F.R. §§ 405.401–.454 (1966). Each method is described fully at 20 C.F.R. § 405.452 (1977).

**5.** 31 Fed.Reg. 14809–10 (1966).

**6.** 20 C.F.R. § 405.452(c)(2), (3) (1977).

**7.** Plaintiff first filed an action in this Court, but was ordered to exhaust administrative remedies. *Aristocrat South, Inc. v. Mathews*, 420 F.Supp. 23 (D.D.C.1976).

**8.** 5 U.S.C. § 553(c).

**9.** 5 U.S.C. § 706(2)(E).

previously utilized the Departmental Method successfully.[10]  Instead, the agency acted in response to a report of the Senate Finance Committee, which stated in pertinent part:

> [T]he committee and the Department concur that the Department should simplify its cost finding and cost reporting requirements for smaller institutions (e. g. those having less than 100 beds) and require the use of the Combination Method by those institutions without an option to use the Departmental Method.  At the same time larger institutions (e. g. those with 100 beds or more) should be required to carry out cost finding under more sophisticated methods and to apportion costs under the more accurate Departmental Method.

S.Rep.No.91–1431, 91st Cong., 2d Sess. 179 (1970).  Even assuming that it was rational for HEW to consider only the factors enumerated in the Senate report, which focus on size, plaintiff argues that skilled nursing facilities of over 100 beds, like itself, should have been placed in the Departmental Method category, as indicated in the report.  As further evidence of arbitrariness, plaintiff points out that the Secretary proposed rules in 1976, still pending, that would actually require all skilled nursing facilities to use the Departmental Method, in light of a survey conducted in 1974.[11]

In a related vein, Diplomat Lakewood argues that the Secretary exceeded his statutory authority in promulgating the 1972 regulations, since they allow subsidization of Medicare patients by nonbeneficiaries in facilities such as plaintiff.  This result could have been avoided, the plaintiff urges, if large skilled nursing facilities not affiliated with hospitals were given the option of using the Departmental Method.

Plaintiff has the burden of establishing the invalidity of the regulations attacked here.  *American Nursing Home Association v. Cost of Living Council*, 497 F.2d 909, 914–15 (Em.App.1974).  After a consideration of the facts and the applicable law, the Court finds that plaintiff has failed to prove that the 1972 regulatory change was arbitrary, capricious and outside the Secretary's scope of authority.  Realizing that calculation of actual Medicare costs incurred by each provider was an unrealistic goal, Congress vested the Secretary with broad discretion to develop accounting methods to determine reimbursement of the "reasonable cost" of Medicare, an imprecise concept.  In reviewing his exercise of discretion in this complex statutory area, the Court owes the Secretary "great deference," *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).  The Court is also mindful that the purpose of Medicare is to provide health services to the elderly at minimal cost to them, *see National Welfare Rights Organization v. Mathews*, 174 U.S.App.D.C. 410, 422, 533 F.2d 637, 649 (1976).

The Secretary promulgated the cost apportionment regulations only after extensive study had been undertaken.  They were designed to correct two problems that had arisen in the initial years of the program.  First, levels of reimbursement had been excessive, in large part because most hospitals were selecting the Combination Method to aggregate the costs of ancillary services and were therefore obtaining reimbursement for such inappropriate departments as pediatrics and obstetrics.[12]  Second, many smaller hospitals and nursing homes lacked the accounting capability to break down ancillary department costs under the Departmental Method; reimburse-

---

**10.**  Admission Nos. 30, 44, 45;  Record at 164, 168.  A 1974 survey by HEW indicates that there are approximately 800 skilled nursing facilities with 100 or more beds, of which approximately one-quarter had used the Departmental Method prior to 1972.

**11.**  41 Fed.Reg. 52067 (1976).

**12.**  Comptroller General, Report to the Congress, Lengthy Delays in Settling the Costs of Health Services Furnished Under Medicare 26–28 (June 23, 1971).  The Comptroller estimated that 90% of the participating hospitals were using the Combination Method.  *Id.* at 26 n. a.

ment requests filed under the method could therefore be grossly inaccurate.[13]

Against this background, the Senate Finance Committee recommended that providers with 100 or more beds be required to use the Departmental Method and smaller institutions be obligated to use the Combination.[14] The Secretary's proposed, and final, regulations modified this scheme by including only hospital-affiliated skilled nursing homes of 100 or more beds in the Departmental Method group; all other skilled nursing facilities were ordered to file under Combination.

The Court finds that this categorization was sound and reasonable, demonstrating the Secretary's "consideration of the relevant factors": bed size, accounting sophistication, and excessive reimbursement problems. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The Secretary's recognition and accommodation of these serious problems in Medicare reimbursement cost apportionment was reasonable and should be upheld. *See Air Transport Association v. FEO*, 382 F.Supp. 437, 447 (D.D.C. 1974), *quoting Trans World Airlines v. FEO*, 380 F.Supp. 560, 567 (D.D.C.1974), *both aff'd*, 520 F.2d 1339 (Em.App.1975). The Departmental Method group includes those large providers most likely to have sophisticated accounting ability, namely hospitals and nursing homes affiliated with hospitals. The Combination Method group encompasses the providers tending to have less accounting prowess and least likely to abuse the ancillary cost aggregation procedures of the Combination Method. The Secretary chose this break-down of facilities in order to improve Medicare reimbursement procedures for the majority of providers and thereby benefit Medicare recipients.

██ The regulatory scheme remains reasonable even though Diplomat Lakewood, as a nonaffiliated skilled nursing facility of 129 beds with the accounting ability to apportion costs under the Departmental Method, may stand as an exception to the underlying rationale. A regulatory category in the social welfare field does not have to match perfectly the classes to which it applies. *See Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Since the scheme is meant to minimize subsidization of costs between Medicare patients and nonbeneficiaries, it cannot be said that the Secretary exceeded his statutory authority just because the plaintiff has been denied some reimbursement for actual costs.[15] Given the reasonableness of the 1972 regulations, it is not for the Court to say that the Secretary should have taken another approach more favorable to providers in Diplomat Lakewood's position. *Citizens to Preserve Overton Park v. Volpe, supra*, 401 U.S. at 416, 91 S.Ct. 814; *Udall v. Tallman, supra*, 380 U.S. at 16, 85 S.Ct. 792; *American Paper Institute v. Train, supra*, 177 U.S.App.D.C. at 191, 543 F.2d at 338.

The Court cannot credit plaintiff's argument that the Secretary's proposal, initiated in 1976 to require all skilled nursing facilities to use the Departmental Method, demonstrates the arbitrariness of the 1972 changes. Instead, as defendant has demonstrated, the proposal is possible only because these facilities have now developed accounting experience that was lacking in 1972.

██ The Court also rejects the plaintiff's final argument, that the regulations were not promulgated in accordance with the procedural requirements of the APA. The nursing home industry took full advantage

---

13. Testimony of Mr. Thomas M. Tierney, Director, Bureau of Health Insurance, Social Security Administration, before the House Subcommittee on Government Operations, "Administration of Federal Health Benefit Programs (Part 1—Medicare Program)," 91st Cong., 2d Sess. 20, 21, 25 (1971).

14. *See p. 4 supra.*

15. If Diplomat Lakewood could provide HEW with acceptable figures for actual costs relative to Medicare service provision, HEW would reimburse it at that level, pursuant to an exception to the regulations. Diplomat Lakewood has not been able to produce such exact figures for HEW.

of the opportunity to comment on the proposed regulations. The Secretary did perhaps provide a more concise and helpful statement of basis and purpose with the original 1966 regulations, creating the option between the methods, than he did with the 1972 rules. However, in the preamble to the final regulations, the Secretary summarized the changes and responded to comments. In so doing, he articulated and clarified the reasons for deleting the option between cost apportionment methods—namely to eliminate excess cost reimbursement under the Combination Method and to simplify cost accounting for less sophisticated providers.[16] Plaintiff's reliance on *Rodway v. United States Department of Agriculture*, 168 U.S.App.D.C. 387, 514 F.2d 809 (1975), to challenge the sufficiency of this statement of purpose is grossly exaggerated. In that case there were serious questions as to notice, solicitation of comments and the issuance of a purpose statement. The rulemaking steps taken by the Secretary here are far more complete. The Court finds that the regulations' preamble suffices as a statement of basis and purpose under § 4 of the APA. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

Diplomat Lakewood has not met its burden to demonstrate that the regulations are arbitrary, capricious, lacking a rational basis or in excess of the Secretary's statutory authority.

Accordingly, the Secretary is entitled to summary judgment and Diplomat Lakewood's complaint must be dismissed.

Ordered accordingly.